**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**ANTONIO ISRAEL SOTOSOSA,**

**Plaintiff,**

**v,**

    **Case No. 1:19-cv-00192-TPK**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

    **OPINION AND ORDER**

**Defendant**.

## OPINION AND ORDER

Plaintiff Antonio Israel Sotososa filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. The final decision under review in this case was issued by an Administrative Law Judge on October 25, 2018, and it denied Mr. Sotososa's application for disability insurance benefits. That decision was made following a remand of the case by this Court which was ordered on November 3, 2016. *See Sotososa v. Colvin*, 2016 WL 6517788 (W.D.N.Y. 2016). Mr. Sotososa has now moved for judgment on the pleadings (Doc. 7) and the Commissioner has filed a similar motion (Doc. 8). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the defendant Commissioner.

## I.  BACKGROUND

Plaintiff's application for disability benefits was filed on January 28, 2013. In that application, he alleged that he became disabled October 23, 2012, due to depression, social phobia, and panic, anxiety, sleep, and personality disorders. He was 56 years old at the time his application was filed. The procedural history of this case up through the time of the Court's remand order is detailed in that order. *Sotososa, supra*, at *1. The Court remanded the case because it found that the ALJ had not adequately developed the record because he made his decision without obtaining certain treatment notes from Lakeshore Behavioral Health, where Plaintiff had been receiving treatment for over a year at the time of the ALJ's decision. *Id*. at *3-5.

After remand, Plaintiff appeared and testified at an administrative hearing held on June 26, 2018. A vocational expert, Ms. Droste, also testified at the hearing.

The Administrative Law Judge issued an unfavorable decision on October 25, 2018. He

concluded, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017.  Next, he found  that Plaintiff had not worked since his alleged onset date and that he suffered from severe impairments including depressive disorder, anxiety, panic disorder, and personality disorder. None of them were severe enough to satisfy the criteria for disability contained in the Listing of Impairments, however.  According to the ALJ, even with these impairments Plaintiff could work at all exertional levels.  However, he had non-exertional limitations which restricted him to simple unskilled work involving only occasional interaction with the public.

Ms. Droste, the vocational expert, was asked whether a person with these limitations could do either Plaintiff's past work as a shirt presser in a dry cleaning factory or business, or any other  jobs.  She testified that such a person could do Plaintiff's past work.  She also said that a typical employer would not tolerate someone being off task more than 9% of the workday above and beyond scheduled breaks or missing more than six or eight days of work per year.  Further, most employers would not give more than two warnings concerning physical or verbal altercations with coworkers, and some would discharge an employee for one such altercation if it were severe enough.  Accepting the testimony that Plaintiff could do his past relevant work, the ALJ found that he was not disabled.

Plaintiff, in his motion for judgment on the pleadings, raises a single issue.  He argues that the ALJ's residual functional capacity determination is unsupported by substantial evidence because it favors the opinion of a consultative examiner over views expressed by Plaintiff's treating sources.

## II.  THE KEY EVIDENCE

In *Sotososa, supra*, at *3, the Court summarized those portions of the record relevant to its decision this way:

The record contained 14 pages of treatment notes from Lakeshore. Based on the ALJ's decision and the hearing transcript, however, it is apparent that there were other Lakeshore treatment notes missing from the record that created an obvious gap.

Sotososa testified, for instance, that he received counseling at Lakeshore from a therapist named "Ernest." Tr. 56. The ALJ noted in his decision that Sotososa "said he was currently in counseling with Ernest at Lakeshore[.]" Tr. 34; see also Tr. 35 ("He sees a counselor and psychiatrist at Lakeshore."). The only item in the record from Ernest, however, is a letter that Sotososa submitted to the Appeals Council that was admitted to the record after the ALJ's decision. Tr. 4, 449. That letter, dated March 4, 2015, indicated that Sotososa had been attending treatment at Lakeshore and seeing Ernest for individual counseling sessions on a biweekly basis since December 2013. Tr. 449. Despite the regularity of Sotososa's counseling sessions with Ernest, there were no treatment notes regarding these

sessions in the record.

The March 4, 2015 letter also indicated that Sotososa was "scheduled to see an attendant prescriber every one to three months for medication management [at Lakeshore]." Tr. 449. The record contains two Lakeshore medication sheets (Tr. 367, 369) stamped by Nurse Practitioner Faye Taber ("N.P. Taber"), but the record lacks any other treatment or medication management records from N.P. Taber even though Sotososa apparently saw her several times a year. Additionally, the ALJ gave "great weight" to consultative psychiatric examiner Susan Santarpia, Ph.D. ("Dr. Santarpia") in part because her opinion was "not inconsistent with the treatment notes of ... Lakeshore[.]" Tr. 36

The Court now adds this additional summary.

At the first administrative hearing, Plaintiff also testified that he was able to drive to the hearing and also drove three to four times per week to do shopping. He took numerous medications which made him drowsy. During the day, he read and watched television. Plaintiff lived alone and was able to do routine household chores, and he attended church services several times per week.

Plaintiff was fired from his job as a shirt presser due to a fight with a coworker. He reported feeling anxious and also sleeping many hours during the day.

At the second hearing, Plaintiff said that he lacked energy and did not want to leave his house. His anxiety affected his sleep and his thinking. He also had occasional panic attacks. Being around people made him nervous. His memory and ability to concentrate and organize his thoughts were also affected. Plaintiff also said that he had physical problems and that he was "not in good shape."

The vocational testimony at the second hearing is summarized above.

Pertinent medical records show the following. The Lakeshore (or Dent Neurologic Institute and Best Self Behavioral Health) records, which were supplemented on remand, indicate that Plaintiff had been diagnosed with panic disorder, generalized anxiety disorder, major depressive disorder (recurrent episodes, moderate), and PTSD. His mood was consistently described as anxious and his memory and concentration were intact. He reported that anxiety was his most limiting impairment and that medication helped with that issue to some extent. Plaintiff was being seen frequently for individual counseling and less often for medication management. He did not often report any mood disturbance.

A nurse practitioner, Faye Taber, completed a questionnaire dated May 3, 2018, on which she stated that Plaintiff's GAF was 57, and that test results showed mild to moderate depression at one point and moderate to severe depression at another. He had also missed quite a number of appointments. She noted many symptoms including difficulty concentrating and persistent anxiety but did not rate his ability to perform specific work-related functions. She did say, however, that

he could not sustain full-time employment.  (Tr. 805-09).  Another work capacity form, entitled "Physical Residual Functional Capacity Questionnaire," was completed by Diane Loomis, a nurse practitioner from WBMD Family Medicine,  on May 2, 2018 .  She said Plaintiff had been diagnosed with anxiety, hypertension, GERD, squamous cell cancer of the nose, and memory difficulties, and that he had trouble focusing.  She thought his anxiety precluded him from doing even low stress jobs, that he would miss more than four days of work per month, and that he had lifting and postural limitations as well.  (Tr. 984-88).

Plaintiff saw Dr. Santarpia, a psychologist, for an evaluation on March 26, 2013.  He reported difficulty sleeping and anxiety but said medication helped control his symptoms.  His affect was appropriate and his mood was euthymic.  Plaintiff performed the usual activities of daily living.  Dr. Santarpia thought he was mildly impaired in performing complex tasks due to distractibility but he could do simple work.  (Tr. 252-55).

## III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

"[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

Plaintiff's single claim of error raises the issue of whether the ALJ's residual functional capacity finding, which essentially mirrored the conclusions reached by the consultative examiner, is supported by substantial evidence.  In order to address this contention, the Court will first set out in some detail how the ALJ arrived at his decision.

First, the ALJ found that Plaintiff's report of symptoms was not entirely consistent with the medical evidence (a conclusion which Plaintiff does not directly contest).  The ALJ pointed out that the medical records showed that Plaintiff was capable of leaving his home and interacting with others and that he was "consistently evaluated by multiple providers to have normal and stable neuropsychiatric findings."  (Tr. 469).

Next, the ALJ considered the opinion evidence.  He first gave great weight to Dr. Santarpia's views as being "consistent with and supported by the record."  *Id*.  On the other hand, he gave little weight to the opinion of Nurse Practitioner Taber, reasoning that the opinion was not provided by an acceptable medical source and that it did not address Plaintiff's ability to perform work-related activities.  (Tr. 470).  Similarly, the ALJ did not assign much weight to Nurse Practitioner Loomis's opinion, stating that "these findings were not provided by an acceptable medical source and are inconsistent with the claimant's activities and evidence in the medical record."  *Id*.

Plaintiff faults the ALJ's decision for several reasons.  He argues that Dr. Santarpia's opinion was not, as the ALJ asserted, consistent with the medical record because the record demonstrates persistent mental health symptoms, including a fear of leaving his home and difficulty being around others.  They also showed that he was consistently experiencing problems with memory, attention, concentration, insight, and judgment.  He further contends that Dr. Santarpia's opinion was based on examination findings that were contradicted by treatment notes both pre-dating and post-dating her report and notes that it is inconsistent with the opinions of Ms. Taber and Ms. Loomis.  Plaintiff also takes issue with the reasons given by the ALJ for rejecting those latter two opinions, noting that they both had an extensive treating relationship with him and asserting that the ALJ failed to provide an adequate explanation for how those opinions conflicted with the record.  The Commissioner responds that although Plaintiff has identified evidence that conflicted with Dr. Santarpia's opinion and supported the opinions of the two nurse practitioners, there is also evidence to the contrary, and that the ALJ legitimately chose to credit that evidence, as a reasonable person could have done on this record.

The Court first notes that Ms. Taber did not evaluate Plaintiff's ability to perform any work-related functions, a point which Plaintiff does not contest.  An ALJ may properly discount any medical opinion which does not assess the claimant's ability to perform those physical or mental abilities necessary for work.  *See, e.g., Distafano v. Berryhill,* 363 F.Supp.3d 453, 475 (S.D.N.Y. 2019).  It is black-letter law that "[t]he mere existence of a mental disturbance ... does not constitute a 'disability' for social security purposes absent evidence of functional loss." *Rivera v. Schweiker*, 560 F. Supp. 1091, 1096 (S.D.N.Y. 1982).  Because Ms. Taber was unable to comment on the extent, if any, of Plaintiff's functional loss arising from his mental impairments, the ALJ acted within his discretion in discounting that opinion for that reason.

As to the ALJ's choice to elevate Dr. Santarpia's opinion over that of Nurse Practitioner Loomis, the Court agrees with the Commissioner that the record contains sufficient evidence to support that choice.  As noted above, although the treatment notes do contain reports of symptoms which could cause significant functional limitations, they also show that Plaintiff was able to work for a period of time despite his symptoms (*e.g.* Tr. 244, 263) and that at various times throughout the treatment record he tolerated his medication well, was alert and oriented, and that his attention, concentration, memory, insight, and judgment were intact (*e.g.* Tr. 342, 379, 767).  Additionally, he was able to engage in many activities of daily living.  Thus, the record does not unilaterally point to one conclusion about Plaintiff's mental limitations.

Here, the Court must be mindful that, under the "substantial evidence" standard of review, it is peculiarly within the province of the ALJ to choose among competing but reasonable interpretations of the evidence.  When the record contains substantial support for the ALJ's choice, the presence of substantial evidence to support a contrary conclusion does not support reversal.  *See, e.g., Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 194 (N.D.N.Y. 2019) ( "'it is the ALJ's responsibility to "choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment.' " *Robles v. Colvin*, 2016 WL 814926, at *4 (N.D.N.Y. Feb. 29, 2016) (*quoting Crofoot v. Comm'r of Soc. Sec.*, 2013 WL 5493550, at *8 (N.D.N.Y. 2013))."  It is not the Court's function to reweigh the evidence, which is what Plaintiff is asking for here.  Consequently, Plaintiff's asserted claim of error does not provide the Court with a basis for reversing or remanding this case.

## V.  CONCLUSION AND ORDER

For the following reasons, the Court **DENIES** Plaintiff's motion for judgment on the pleadings, (Doc. 7), **GRANTS** the Commissioner's motion (Doc. 8), and **DIRECTS** the Clerk to enter judgment in favor of the defendant Commissioner.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**